IN THE COURT OF CRIMINAL APPEALS
OF TEXAS
 

 
NO. PD-0613-13

 
 
LEONARD PIERSON, JR., Appellant 
 
v.
 
THE STATE OF TEXAS
 

 
ON APPELLANT’S PETITION FOR DISCRETIONARY REVIEW
FROM THE SIXTH COURT OF APPEALS
BOWIE COUNTY

 
 
           Price, J., filed a concurring opinion.
 
CONCURRING OPINION
           I join the Court’s opinion. I write separately for two reasons. First, while I agree that
the appellant did not satisfy the predicate for impeachment by proof of a prior false
accusation, that does not necessarily mean that the question he posed would invariably be
deemed inappropriate had the proper predicate been laid. Notwithstanding language in this
Court’s opinions in Flannery v. State and Hammer v. State,


 we have yet to disclaim the
admissibility of evidence of prior false accusations to impeach the testimony of complaining
witnesses in sex offense cases by attacking their general credibility. In this context, the Sixth
Amendment right to confrontation may yet be held to trump the general prohibition against
impeachment on collateral matters and the prohibition in Rule 608(b) of the Rules of
Evidence against impeachment by specific conduct.


 Second, while I agree with the Court
that a reviewing court owes great deference to the trial court’s judgment whether an
instruction to disregard an inappropriate question obviates the need for a mistrial, I think it
worthwhile to acknowledge the appellate presumption of the efficacy of such instructions to
disregard, which we entertain whenever the defendant argues that only the radical remedy
of a mistrial can save him from what he regards as indelible prosecutorial prejudice. 
Considering the risk that a precipitous mistrial poses to the defendant’s “valued right to have
his trial completed by a particular tribunal[,]”


 trial judges should not lightly dismiss the
possibility that a stout instruction to disregard will serve to ameliorate any potential for jury
contamination—especially from what, as here, amounts to an unanswered question of
ambiguous import on defense counsel’s part.
I.
           The appellant’s first question upon cross-examining the complaining witness in this
case was: “Did you also make an allegation that [the appellant] did these same things to his
own daughter?” If, in fact, the complaining witness ever claimed to have had personal
knowledge that the appellant sexually abused his own daughter, and in fact that claim was
false, asking such a question as a predicate to impeachment might have been a permissible
exercise of his Sixth Amendment rights under the Confrontation Clause, notwithstanding any
contrary rule of evidence that the State might have interposed against its admissibility.


 Even
so, as the court of appeals essentially pointed out,


 the real problem in this case is that the
appellant was unable to establish the predicate facts by which he could assert admissibility
under such a theory, as required by Rule 104(a) of the Rules of Evidence.


 The Court today
seems to confirm this aspect of the court of appeals’s opinion when it concludes that the
appellant has “failed to carry his burden as the proponent of the evidence that the victim’s
answer was admissible.”


 I agree with this. But I wish to emphasize that we have not yet
altogether ruled out the possibility that the Confrontation Clause requires that a defendant
be permitted to develop evidence of prior false accusations by the complaining witness, at
least in sex offense prosecutions, as general evidence of the complaining witness’s lack of
credibility, notwithstanding Rule 608(b) of the Rules of Evidence.



II.
           I also agree that it cannot be said, based upon the record in this case, that the trial
judge acted “irrationally[,]” “irresponsibly,” or “precipitately in response to the prosecutor’s
request for a mistrial.”


 It is certainly true “that the extent of the possible bias” that may have
been engendered by the inappropriate question in this case “cannot be measured,” and “that
some trial judges might have proceeded with the trial after giving the jury appropriate
cautionary instructions.”


 I am inclined to think that an instruction to disregard in this case
would have sufficed to remove the potential for juror bias. Indeed, I do not think there was
a grave potential for actual juror bias here, since the motive behind the question would not
have been immediately apparent to the jury and, in any event, there was no reply.


 
“Nevertheless, the overriding interest in the evenhanded administration of justice requires
that [a reviewing court] accord the highest degree of respect to the trial judge’s evaluation
of the likelihood that the impartiality of one or more jurors may have been affected by the
improper” question.



           In the further interest of the evenhanded administration of justice, however, I feel
compelled to remind the bench and bar of our appellate presumption of the efficacy of jury
instructions. When defendants request mistrials on account of prosecutorial indiscretions,
we have been quick to recognize the ameliorative impact of judicial instructions to disregard:
In the vast majority of cases in which argument is made or testimony
comes in, deliberately or inadvertently, which has no relevance to any material
issue in the case and carries with it some definite potential for prejudice to the
accused, this Court has relied upon what amounts to an appellate presumption
that an instruction to disregard the evidence will be obeyed by the jury. In
essence this [C]ourt puts its faith in the jury’s ability, upon instruction,
consciously to disregard the potential for prejudice, and then consciously to
discount the prejudice, if any, in its deliberations.




Every case must be considered on its own facts, of course, but we have observed that reversal
of a conviction for the failure of the trial court to declare a mistrial following an instruction
to disregard an improper question is “rare.”


 Sauce for the defendant’s goose ought to be
sauce for the prosecutor’s gander.
           Moreover, we have typically relied upon the efficacy of instructions to disregard in
the context of resolving issues of procedural default. A defendant who requests a mistrial
without first seeking an instruction that the jury disregard some objectionable and potentially
incendiary matter that has made its way into evidence has only preserved error for appeal if
the appellate court can say that the instruction to disregard would not, in any event, have had
the desired effect on the facts of the particular case.


 In that context, too, we have
essentially applied an appellate presumption of efficacy.



           In Garza, we recently observed:
Once the defendant shows he is being tried for the same offense after
declaration of a mistrial to which he objected, a heavy burden shifts to the
State to justify the trial court’s declaration of the mistrial. The State must
demonstrate a “manifest necessity” for a mistrial, which is to say a “high
degree” of necessity, and the trial court’s discretion to declare a mistrial based
on manifest necessity is limited to, and must be justified by, extraordinary
circumstances. That discretion is abused, we have said, whenever the trial
court declares a mistrial without first considering the availability of less drastic
alternatives and reasonably ruling them out. But the trial court appropriately
exercises its discretion to declare a mistrial—that is to say, manifest necessity
for the mistrial exists—when the particular circumstances giving rise to the
declaration render it impossible to arrive at a fair verdict before the initial
tribunal, when it is simply impossible to continue with trial, or when any 
verdict that the original tribunal might return would automatically be subject
to reversal on appeal because of trial error.




The appellant’s question in this case, however erroneous or inflammatory, did not make it
impossible to continue the trial, nor did it inject something into the record that would result
in automatic reversal on appeal. So the only basis for manifest necessity presented here is
that the question so contaminated the jury as to render it impossible for the initial tribunal to
arrive at a fair verdict. Could the appellant’s jury have arrived at a fair verdict had it been
instructed, in no uncertain terms, consciously to recognize the potential for prejudice and
consciously to put the appellant’s question (and any prejudicial implications they may or may
not have drawn from it) out of its collective mind while deliberating?
           I am personally inclined to think that a fair trial was not impossible had the trial court
given such an instruction to disregard. But I am willing to concede that reasonable minds
could disagree on the efficacy of such an instruction in this case. Under these circumstances,
the court of appeals did not err to defer to the trial court’s judgment on that question,
consistent with the dictates of Arizona v. Washington. I would only urge that, in order to
justify that “highest degree of respect” that the Supreme Court has accorded to the trial
court’s discretion in this regard, trial judges take great care not to “act precipitately in
response to the prosecutor’s request for a mistrial.”


 What that means to me is that, when
making determinations of manifest necessity vel non—that is to say, when balancing the
State’s right to a fair trial designed to end in just judgments against the defendant’s valued
right to have his trial completed by a particular tribunal


—trial judges must give the same
consideration to the remedial potential of an instruction to disregard that they would almost
routinely give such an instruction any time it is the defendant who seeks a mistrial.
           With these additional remarks, I join the Court’s opinion.
 
FILED:         April 9, 2014
PUBLISH